Kathleen R. REITER, Individually and as representative of the Class of All Personal Users of Hearing Aids located in the United States, Plaintiffs,

v.

SONOTONE CORPORATION, a New York corporation, Beltone Electronics Corporation, an Illinois corporation, Dahlberg Electronics, Inc., a Minnesota corporation, Textron Incorporated, a Delaware corporation, and Radioear Corporation, a Delaware corporation, Defendants.

No. 4–75–Civ. 206.

United States District Court,
D. Minnesota,
Fourth Division.

Memorandum Order March 31, 1977.

As Amended May 10, 1977.

# 934

John E. Thomas, Cochrane & Bresnahan, St. Paul, Minn., for plaintiffs.

James H. Levy and William I. Kampf, St. Paul, Minn., for Beltone Electronics; Julian R. Wilheim, Chicago, Ill., Fred L. Woodworth, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., of counsel.

Eugene M. Warlich, Doherty, Rumble & Butler, St. Paul, Minn., for Radio Ear Corp.

Elliot S. Kaplan and Deborah J. Palmer, Robins, Davis & Lyons, Minneapolis, Minn., for Textron Incorporated.

John M. Palmer, Levitt, Palmer, Bowman, Bearmon & Rotman, Minneapolis, Minn., for Dahlberg Electronics Corp.

LARSON, District Judge.

Plaintiff Kathleen R. Reiter brings this antitrust action seeking damages and injunctive relief against five manufacturers of hearing aids. In her complaint she requests certification of a class consisting of all persons who have purchased hearing aids manufactured by any of the defendants. All defendants except Sonotone, which has not appeared in any proceeding in this case, move for dismissal or, in the alternative, for summary judgment.

Plaintiff, along with all potential members of the class she seeks to represent, is a purchaser of a hearing aid manufactured by one of the defendants and distributed by methods that allegedly contravene the antitrust laws. She is not in any business related to that of defendants or their distributors and alleges no property interest other than that of an individual who, because of defendants' actions, was forced to part with more money to purchase a hearing aid than she would have had to pay had they not engaged in allegedly illegal business practices. She is the classic consumer plaintiff.

Defendants base their motion solely on the ground that plaintiff and the members of any class she would represent lack standing to sue for damages under § 4 of the Clayton Act, 15 U.S.C. § 15. In support of their arguments defendants have cited an impressive array of cases dealing with the standing issue. They concede, however, that apart from a very recent set of opinions issued by Honorable Spencer Williams, United States District Judge for the Northern District of California,[1] there exists no case law precisely on point. To date, a number of large consumer class actions have been prosecuted, many to conclusion, without any consideration of the standing issue raised here. This case therefore is one of first impression in this district and, if only published precedent is considered, nationally.

## A. The "Target Area" Test.

■ Development of standing doctrine under § 4 of the Clayton Act has been shaped by judicial awareness of a need to limit the statute's seemingly broad grant of rights to sue: "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court . . . ." As the Second Circuit has remarked, a literal interpretation of these words would open the "flood-gate to all, no matter how remote their interest or incidental their relationship"; given the imprecision of substantive antitrust statutes and doctrine, such limitation of standing is necessary to keep the caseload and the fact situations of the cases within manageable bounds. *Calderone Enterprises Corporation v. United Artists Theatre Circuit, Inc.*, 454 F.2d 1292 at 1295–96 (2d Cir. 1971), *cert. den.* 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972). Therefore, in analyzing a plaintiff's relationship to defendants and to the alleged facts, the Court must ask whether plaintiff is a person within the "target area" of the alleged antitrust conspiracy.

---

1. *Morgan v. Federated Dept. Stores, et al,* D.C., 426 F.Supp. 880; *Weinberg v. Federated Dept. Stores, et al* Civ.No. 76–367 SW, D.C., 426 F.Supp. 880; *Smith, et al v. Toyota Motor Sales USA, Inc., et al,* No. C–75–0727 SW; *Gutierrez, et al v. E. & J. Gallo Winery Co., Inc., et al,* 425 F.Supp. 1221 (D.C.1977). In three identical opinions, Judge Williams dismissed the cases for lack of standing on the part of plaintiff consumers. In a letter to counsel for plaintiffs in these cases, dated March 16, 1977, he has denied rehearing.

*Sanitary Milk Producers v. Bergjans Farm Dairy, Inc.,* 368 F.2d 679 at 689 (8th Cir. 1966) (explicitly endorsing application of the "target area" test as explained in *Karseal Corp. v. Richfield Oil Corp.,* 221 F.2d 358 at 362 (9th Cir. 1955)).

▮ The target area test is essentially a measure of remoteness of injury resulting from antitrust violations. In most cases it serves to eliminate those plaintiffs whose business relationship with defendants is so attenuated as to render the alleged injury negligible or highly speculative. *In re Antibiotic Antitrust Actions,* 333 I'.Supp. 310 (S.D.N.Y.1971) (farmers whose purchase of poultry feed was several levels removed from the actions of drug manufacturers, so that damage could not possibly be established, lacked standing); *Nassau County Association of Insurance Agents, Inc. v. Aetna Life and Casualty Co.,* 361 F.Supp. 967 (S.D.N.Y.1973), *aff'd* 497 F.2d 1151 (2d Cir.), *cert. den.* 419 U.S. 968, 95 S.Ct. 232, 42 L.Ed.2d 184 (1974) (injury to association of insurance agents too remote where actions of company directed at the agents); *Calderone Enterprises Corp., supra,* (theatre landlord whose lessee's revenues, upon which the rental was partially based, were adversely affected by defendants' business methods, too remote); *State of Illinois v. Ampress Brick Co., Inc.,* 67 F.R.D. 461 (N.D. Ill.1975), *rev'd in part* 536 F.2d 1163 (7th Cir. 1976), *cert. granted* 429 U.S. 938, 97 S.Ct. 352, 50 L.Ed.2d 307 (1976) (an "ultimate" consumer or user of goods distributed by means involving antitrust violations has standing to attempt proof of damages and is not precluded by "remoteness" even where the goods have passed through intermediaries and been altered).

▮ The standing of persons whose business relationship to defendants is solely that of ordinary consumer must be evaluated in the same manner. Where the injury is so remotely connected to the alleged conspiracy that damages can only be speculative, the consumer lacks standing. *Jeffrey v. Southwestern Bell,* 518 F.2d 1129 (5th Cir. 1975) (monopolization of telephone equipment market aimed at "manufactur-ers, sellers, and lessors" of equipment rather than subscribers); *Lefrak v. Arabian American Oil Co.,* 405 F.Supp. 597 (E.D.N. Y.1975) (consumer is within target area of foreign suppliers' conspiracy to fix prices of home heating oil).

▮ Plaintiff here is a purchaser of an item that is sold in the form in which it is manufactured; it does not become part of something else before the consumer obtains it, so that the market effects of anticompetitive practices are readily ascertainable as to each hearing aid sold. *State of Illinois v. Ampress Brick, supra.* The presence of retailers in the distribution chain does not shield defendants from suit based on defendants' actions. *Lefrak, supra; In re Master Key Antitrust Litigation,* 528 F.2d 5 at 12 (2d Cir. 1975). If defendants did indeed conspire to limit competition between themselves, the consumers for whose use hearing aids are manufactured are clearly "targets" of the conspiracy.

## B. "Business or Property."

▮ Defendants also argue that consumers cannot have standing to sue under the antitrust laws because the injury to "business or property" which gives rise to a right of action under Clayton Act § 4 must be to plaintiff's business interests. The Court cannot agree with that conclusion.

Most of the cases dealing with consumer standing under § 4 involve businessmen "consumers"—persons who can and do allege injury to their commercial interests by virtue of defendants' actions. For this reason, much of the judicial language cited by defendants is inapplicable in this context. *See, e. g., Calderone, supra,* (requirement of competitive injury applied to eliminate plaintiff-businessman whose injury was too remote); *GAF Corp. v. Circle Floor Co., Inc.,* 463 F.2d 752 (2d Cir. 1972), *cert. dism.* 413 U.S. 901, 93 S.Ct. 3058, 37 L.Ed.2d 1045 (1973) (requirement of competitive injury applied to eliminate plaintiff corporation fighting attempted takeover).

Defendants base much of their argument on the holding in *In re Multidistrict Vehicle*

*Air Pollution M.D.L. No. 31,* 481 F.2d 122 (9th Cir.), *cert. den.* 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973), which dismissed governmental plaintiffs who alleged general economic harm rather than specific injury to the states as consumers. *Multidistrict Vehicle Air Pollution, supra,* at 125.[2] In deciding that case the panel relied, as do defendants here, on *Hawaii v. Standard Oil of California,* 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), in which the Supreme Court held that the State of Hawaii lacked standing to sue as *parens patriae* alleging damage to its economy caused by defendants' anticompetitive actions. Reliance on one phrase from that case, however, is misplaced. Although the Court did, as defendants claim, conclude that the words "business or property" "refer to commercial interests or enterprises", 405 U.S. 251 at 264, 92 S.Ct. 885 at 892, 31 L.Ed.2d 184, its interpretation of "commercial interests" clearly encompasses the interest of consumers who must pay more in the marketplace because of defendants' actions. 405 U.S. 251 at 262 fn. 14, 92 S.Ct. 885. The Court distinguished the State's interest in its general economic welfare from its proprietary interest as a consumer, and it suggested that under 15 U.S.C. § 15 (Clayton Act § 4) a state could in its proprietary capacity bring a class action as representative of its consumer citizens. 405 U.S. 251 at 266, 92 S.Ct. 885. In affirming dismissal of the *parens patriae* plaintiff, the Court contradicted the claim of defendants herein that plaintiffs must be in business to have standing under § 4.[3]

The Eighth Circuit decision in *Ragar v. T. J. Raney & Sons,* 521 F.2d 795 (1975), affirming the decision of Judge Henley in the Eastern District of Arkansas, 388 F.Supp. 1184 (1975), does not dispose of the issue. In that case, taxpayers sued investment bankers who allegedly conspired to fix the rate of interest to be paid on municipal bonds at a level higher than that which the city would have had to pay had the bidding not been "fixed." The district court, relying particularly on an Eighth Circuit decision that private citizens lack standing to sue on behalf of a municipality, stated that plaintiffs as property taxpayers neither suffered direct injury nor were within the "target area" of the conspiracy. *Ragar, supra,* at 1187. It went on to declare that plaintiffs did not assert, as they must, an injury to their business or competitive position. The Eighth Circuit affirmed "on the basis of the district court's soundly reasoned opinion". 521 F.2d 795 at 796.

In finding that plaintiffs could not allege injury to the required type of property interest, the district court relied on cases that preceded the Supreme Court's suggestion of consumer standing in *Hawaii v. Standard Oil, supra.* All were cases in which the plaintiffs were persons in business, and the existence or nonexistence of "competitive" injury was invoked only as a means of evaluating causality and remoteness of injury; none involved individual plaintiffs who were "injured in its property . . . by being led to pay more than the worth" of purchased goods. *Chattanooga Foundry v. Atlanta,* 203 U.S. 390 at 396, 27 S.Ct. 65 at 66, 51 L.Ed. 241 (1906). The *per curiam* affirmance in *Ragar, supra,* indicates only that the Circuit Court approved of at least one ground upon which the district court based its holding; it does not clearly indicate specific adoption of the position that a consumer cannot allege injury to "property" within the meaning of Clayton Act § 4.

■ As suggested by Justice Holmes in *Chattanooga Foundry, supra,* at 397, 24 S.Ct. 65, injury to "property" must mean

---

**2.** *See also State of California v. Frito-Lay, Inc.,* 474 F.2d 774 (9th Cir. 1973), *cert. den.* 412 U.S. 908, 93 S.Ct. 2291, 36 L.Ed.2d 974 (1973), in which the state's standing to sue as *parens patriae* on behalf of its consumer citizens was rejected. The Court accepted the claim of injury to the "business or property" of citizens but held that representation of these claimants was

beyond the scope of the *parens patriae* doctrine.

**3.** *See also Jeffrey v. Southwestern Bell, supra,* at 1130, fn.2, in which the Fifth Circuit, while refusing to decide the issue, acknowledged that the Supreme Court apparently had recognized the right of ordinary consumers to sue under § 4.

"the money of the plaintiff." If the phrase "business or property" were interpreted to refer only to persons engaged in commercial activity, the term "property" would be rendered meaningless, for "business" and "commerce" are for all practical purposes and by common understanding identical. This Court cannot conclude that Congress included a meaningless term in this carefully considered legislation.

Defendants claim that the extensive legislative history of the Clayton Act supports their position. However, even Judge Williams, who recently decided that ordinary consumers lack standing under § 4, conceded that the statements made in congressional debate in 1890 and 1914 do not shed a great deal of light on the question. *Weinberg v. Federated Dept. Stores,* C–76–867 SW, 426 F.Supp. 880 at 882–883 (N.D.Cal. 1977). This Court acknowledges that discussion at the time primarily concerned the remedies that would be available to small businessmen rather than to retail consumers. *See,* for instance, 21 Cong.Rec. 3147 (1890) (Sen. George); 51 Cong.Rec. 9198 (1914) (Rep. Taggart). However, as recently as January 25, 1977, Justice Marshall suggested that Congress intended to include consumers among the persons entitled to sue under § 4. *Brunswick Corp. v. Pueblo Bowl-O-Mat,* 429 U.S. 477 fn. 10, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977).

Regardless of the conclusions one draws from a literal reading of the legislative history, the debates must be read in light of the knowledge and assumptions held by society in that period. *McBoyle v. United States,* 283 U.S. 25 at 26, 51 S.Ct. 340, 75 L.Ed. 816 (1930). In 1914, when the Clayton Act was passed to incorporate and extend the Sherman Act, "consumers" were not identifiable as a constituency, and protection of their economic interests was an unknown concept. If they were not discussed at any great length during congressional consideration of the antitrust statutes, it is at least as probable that they did not exist in the minds of Congressmen as that they were deliberately ignored.

In his opinions dealing with this issue Judge Williams concludes that the recent amendments to the antitrust laws indicate a current congressional understanding that consumers lack standing to sue under § 4 and must be protected by a grant of standing to the states to sue as *parens patriae.* See *Weinberg v. Federated Dept. Stores,* supra, at 885; Antitrust Improvements Act, P.L. 94–435 (Sept. 30, 1976). The legislative history of these amendments, however, indicates the contrary: Congress felt that consumers were precluded from suing as a matter of practicality rather than of law.[4] The House report on H.R. 8532, which became P.L. 94–435, stated:

> "Under § 4 of the Clayton Act, any person, including any consumer, who can prove he was injured by price-fixing or any other antitrust violation, has a cause of action. In most instances, however, an individual lawsuit by an injured consumer is, as a practical matter, out of the question." H.Rpt. 94–499, Sept. 22/Nov. 4, 1976, U.S.Code Cong. & Admin.News, 94th Cong.2d Sess. (1976), p. 2575.

The report cites the difficulty, expense, and unmanageability of massive class action litigation and concludes that the *parens patriae* method will serve the public interest in antitrust cases involving large numbers of injured consumers. At no time does it suggest that the legal remedy is a novel one, only that the method of pursuing it is new.

In congressional debate on this bill, Rep. Seiberling, who practiced antitrust law for seventeen years before election to Congress, indicated a similar understanding of consumer standing. "All this bill will do," he stated,

> "is provide a means to make more effective an existing procedural remedy which

---

4. To illustrate the difficulty in declaring unequivocally that Congress did or did not in 1890 or 1914 intend that individual consumers have standing, we note that during those extensive discussions of the plight of the small businessman, Sen. George remarked that a "consumer" overcharged by $25.00 on a commodity would have little incentive to sue because of the cost of litigation. 21 Cong. Rec. 1768 (1890). What he meant by "consumer" is a matter for sheer speculation.

every consumer already has in theory, but which small consumers are in practice unable to exercise." 122 Cong. Rec.— House 2065 (daily ed., Mar. 18, 1976). This Court will not now declare that antitrust remedies are not available to individual consumers "in theory."

The Court does agree with Congress that the remedy sought here may well be unavailable in fact. In passing on the standing question, the one raised on this motion, the Court expresses no opinion on the merits of the claims or the certifiability of a class.

This Court is of the opinion that its Order involves a controlling question of law as to which there is substantial ground for difference of opinion, and that an immediate appeal from the Order may materially advance the ultimate termination of the litigation.

IT IS ORDERED:

That all further proceedings in this matter, including discovery, shall be stayed, pending the disposition by the Court of Appeals of defendants' appeal from this Order.

That defendants' motions be, and hereby are, denied.