**NORTHWEST AIRLINES, INC., Petitioner,**

v.

**FEDERAL AVIATION ADMINISTRATION, Respondent,**

**Memphis–Shelby County Airport Authority, Intervenor.**

No. 92–1245.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 8, 1993.

Decided Feb. 4, 1994.

Richard McMillan, Jr., Washington, DC, argued the cause, for petitioner. With him on the briefs was M. Roy Goldberg, Washington, DC. Nancy S. Bryson and William D. Wallace, Washington, DC, entered an appearance.

Martin W. Matzen, Atty., U.S. Dept. of Justice, Washington, DC, argued the cause, for respondent. With him on the brief, were Peter R. Steenland, Jr., Atty., U.S. Dept. of Justice, and Barry L. Molar, Atty., F.A.A., Washington, DC. Richard W. Danforth, Atty., F.A.A., Washington, DC, entered an appearance.

John J. Corbett, Washington, DC, argued the cause, for intervenor Memphis–Shelby County Airport Authority. With him on the brief, were Rise J. Peters and Daniel I. Davidson, Washington, DC.

Before WILLIAMS, SENTELLE, and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Concurring opinion filed by Circuit Judge STEPHEN F. WILLIAMS.

SENTELLE, Circuit Judge:

Petitioner, Northwest Airlines, Inc. ("Northwest"), seeks review of a decision of the Federal Aviation Administration ("FAA") approving Memphis–Shelby County Airport Authority's application to impose a $3.00 Passenger Facility Charge ("PFC") on passengers enplaned at Memphis International Airport. Northwest argues the FAA's failure to consider the economic and competitive effects of its decision rendered its ruling arbitrary and capricious. See 5 U.S.C. § 706(2)(a) (1988). Northwest also claims that the FAA's approval of the PFC based on

Memphis's proposed alternative project violated the PFC statute's requirements that PFC applications be tied to "specific projects," 49 U.S.C. app. § 1513(e)(2) (Supp. II 1990), and that the airlines be consulted about each of these projects before the application is submitted, *id.* § 1513(e)(11)(C). Finally, Northwest argues that the FAA violated the statute by allowing Memphis to impose PFCs on frequent flyer customers.

We do not reach Northwest's frequent flyer argument because the airline failed to exhaust its administrative remedies as required by 49 U.S.C. app. § 1486(e) (1988). On the merits of Northwest's remaining challenges, we defer to the FAA's reasonable construction of the PFC statute and reject the petition for review in large part. However, because we find that the FAA did violate the consultation provisions of the statute with respect to Memphis's proposed alternative project, we conclude that Memphis may not expend its PFC funds to finance this alternative project.

## I. BACKGROUND

In 1990, Congress amended the Federal Aviation Act to allow local public airport authorities to petition the FAA for permission to impose PFCs on passengers using the airport. *See* Pub.L. No. 101–508, § 9110, 104 Stat. 1388–357 (codified as amended at 49 U.S.C. app. § 1513(e) (Supp. II 1990)). The statute authorizes the FAA[1] to "grant a public agency which controls a commercial service airport authority to impose a fee of $1.00, $2.00, or $3.00 for each paying passenger of an air carrier enplaned at such airport to finance eligible airport-related projects to be carried out in connection with such airport or any other airport which such agency controls." 49 U.S.C. app. § 1513(e)(1). The FAA may only authorize an airport to collect PFCs in order to finance

> specific ... eligible airport-related project[s] which will—
>> (i) preserve or enhance capacity, safety, or security of the national air transportation system,

>> (ii) reduce noise resulting from an airport which is part of such system, or
>> (iii) furnish opportunities for enhanced competition between or among air carriers.

*Id.* § 1513(e)(2)(B).

The statute further provides that "[b]efore submission of an application under [the PFC statute], a public agency shall provide reasonable notice to, and an opportunity for consultation with, air carriers operating at the airport." *Id.* § 1513(e)(11)(C). As part of this consultation process, the airport authority must provide air carriers with written notice of "individual projects being considered for funding through imposition" of PFCs. *Id.* § 1513(e)(11)(C)(i)(I).

On January 28, 1992, the Memphis–Shelby County Airport Authority ("Memphis") requested FAA permission to impose a $3.00 PFC on all passengers enplaned at Memphis International Airport. Memphis's application identified four primary projects that it hoped to finance with PFC revenue: 1) the acquisition of land and the relocation of roadways and utilities to allow future airport development; 2) construction of a new runway; 3) reconstruction and extension of an existing runway; and 4) construction of a new taxiway. In addition, Memphis's application identified a backup project for which the PFC revenue would be used in the event that the FAA failed to approve one or more of its primary projects. This alternative proposal was to use PFC revenues to purchase homes in high noise corridors to reduce the impact of noise on communities surrounding the airport. Memphis had not mentioned this alternative "noise compatibility project" when it consulted with Northwest and other airlines prior to submitting its PFC application.

On May 28, the FAA authorized Memphis to impose a $3.00 PFC and approved its runway and taxiway projects. *Record of Decision, Memphis–Shelby County Airport Authority* at 2–3 (May 28, 1992). However, because Memphis had yet to secure the re-

---

1. The FAA derives its responsibility for administering the PFC statute from the Secretary of

Transportation. 49 C.F.R. § 1.47 (1992).

quired environmental clearance to proceed with its runway and taxiway projects, *see* 14 C.F.R. § 158.25(c)(1)(ii)(B), the FAA also approved the noise compatibility project as an "alternative use" for the PFC revenues "in the event that one or more of the primary projects [was] not implemented in a timely manner." *Record of Decision* at 4. Thus, the FAA's decision authorized Memphis only to "impose" the PFC but did not yet grant Memphis approval to "use" the PFC revenue on any particular project. *Id.*

Northwest now challenges the FAA's approval of the Memphis PFC.

## II. DISCUSSION

### A. *Standard of Review*

Each of Northwest's objections to the FAA's approval of the Memphis PFC ultimately attacks the FAA's interpretation of the PFC statute. We therefore evaluate these challenges under the framework set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–44, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). *Chevron* requires us first to ask

> whether Congress has directly spoken to the precise question at issue. If we can come to the unmistakable conclusion that Congress had an intention on the precise question at issue our inquiry ends there.... However, if the statute before us is silent or ambiguous with respect to the specific issue[ ] before us, we proceed to the second step. At this stage, we defer to the agency's interpretation of the statute if it is reasonable and consistent with the statute's purpose.

*Nuclear Info. Resource Serv. v. Nuclear Regulatory Comm'n*, 969 F.2d 1169, 1173 (D.C.Cir.1992) (en banc) (citations and internal quotations omitted). We evaluate Northwest's statutory challenges using this two-step analysis.

### B. *FAA's Failure to Consider the Economic and Competitive Effects of its Decision*

In comments to the agency, Northwest objected that the imposition of a $3.00 PFC at its Memphis hub would place the airline at a competitive disadvantage with carriers whose hubs did not impose PFCs. Northwest argued that extreme competition in the airline industry would force Northwest to absorb the PFC itself rather than passing the charge along to its passengers. In hopes of escaping this "economic burden," Northwest urged the FAA to disapprove the Memphis PFC entirely, to lower the amount of the PFC to $1.00, or to exempt connecting passengers from the PFC charge. However, the agency did not weigh Northwest's potential economic losses as one of the factors bearing on its decision to approve the $3.00 Memphis PFC. Although the FAA's final order noted that the PFC, "as authorized by law, is expected to be paid by the passenger," the agency determined that "[a]ny decision by an air carrier to adjust its ticket prices to absorb the PFC is beyond the scope" of the PFC statute and the agency's responsibility. *Record of Decision* at 7. Thus, the FAA did not believe itself bound to consider the potential economic burden on Northwest as one of the factors relevant to its approval of the Memphis PFC.

Northwest now argues that the criteria for PFC approval set forth in the PFC statute, along with the general "public interest" criteria set forth in the Federal Aviation Act, made economic and competitive considerations "relevant factors" that the FAA was required to consider before approving a PFC at Memphis. Citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971), Northwest urges that the FAA's failure to consider these factors requires that the agency's decision be set aside. We disagree.

■ The PFC statute directs the FAA to approve PFCs only for

> eligible airport-related projects which will—
>
> (i) preserve or enhance *capacity*, safety, or security of the national air transportation system,
>
> (ii) reduce noise resulting from an airport which is part of such system, or
>
> (iii) furnish opportunities for enhanced *competition* between or among air carriers.

49 U.S.C. app. § 1513(e)(2)(B) (emphasis added). Northwest argues that this language expressly directed the agency to consider the economic and competitive detriment Northwest would suffer as a result of the FAA's decision. According to Northwest, competition in the airline industry would force the airline to absorb any PFC imposed at Memphis, rather than passing the fee along to its customers. But, the argument continues, the cost of internalizing this fee would likely cause Northwest to decrease the number of flights it offers through Memphis, thereby *diminishing* the capacity and competitiveness of the national air transportation system. Because this result would directly contravene two goals of the PFC statute, Northwest argues that the FAA was required at least to consider this potential outcome in deciding to approve Memphis's request for a PFC.

■ The FAA denies that the PFC statute requires it to consider whether every PFC-funded project will enhance the capacity and competitiveness of the airline industry. Rather, as the FAA reads the statute, Congress's use of the disjunctive "or" to join the three PFC criteria means that the agency may approve any "eligible airport-related project" that meets any *one* of the three statutory criteria. In this case, the FAA determined that Memphis's proposed runway and taxiway projects would enhance the capacity and safety of the Memphis airport and that the alternative noise compatibility project would further the statutory goal of reducing airport noise. Having ensured that each possible use of the PFC funds satisfied one of the statutory goals, the agency claims that it was required to look no further. We defer to the FAA's interpretation of the statute.

■ As with all cases of statutory interpretation, "our starting point must be the language employed by Congress." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct.

2326, 2330, 60 L.Ed.2d 931 (1979). In this case, Congress chose to join the three criteria for PFC approval with the word "or," which is " '[n]ormally ... to be accepted for its disjunctive connotation.' " *Unification Church v. INS*, 762 F.2d 1077, 1084 (D.C.Cir. 1985) (quoting *United States v. Moore*, 613 F.2d 1029, 1040 (D.C.Cir.1979)). Thus, the most natural reading of the statute is the one proposed by the FAA—that is, by joining the criteria for PFC approval with an "or," Congress wanted only to ensure that all PFC-approved projects furthered *one* of the three statutory goals.

■ We acknowledge that it might be possible to read the statute as Northwest suggests—requiring that the agency consider each of the criteria set forth in § 1513(e)(2)(B) and approve only those projects that make some reasonable accommodation of the three competing factors. See *Holyoke Water Power Co. v. FERC*, 799 F.2d 755, 761 (D.C.Cir.1986) (MacKinnon, J., dissenting) (noting that the word "or" may sometimes be read to mean "and"). However, "[a]s we must defer to an agency's reasonable interpretation of an ambiguous statute that it must administer, we need not pass on whether there are valid alternative readings" of the PFC statute. *International Union, UMW v. Federal Mine Safety and Health Admin.*, 920 F.2d 960, 963 (D.C.Cir. 1990) (internal citation omitted). Rather, we need only ask whether the FAA's interpretation is reasonable; and we find it eminently reasonable for the agency to adopt the most natural reading of the statute. We therefore conclude that nothing in the PFC statute compelled the FAA to consider the potential economic harm Northwest might suffer as a result of the agency's decision to approve a PFC for Memphis.[2]

Northwest next argues that general provisions of the Federal Aviation Act required the FAA to consider the competitive and economic consequences of its decision.

---

**2.** Petitioner's subsidiary argument that the FAA did not adequately consider whether a $1.00, $2.00, or $3.00 charge would be most appropriate fares no better. It depends on the necessity of the FAA considering the "negative impact" of the greater charge on the competitive factors asserted by Northwest. As we have already held

that these are alternative factors to be considered by the FAA where it deems appropriate and not mandatory factors to be considered by the FAA in conjunction with the goal of the particular project, we reject the included challenge to the amount of the charge along with the greater argument challenging the charge as such.

Northwest cites two provisions in support of this argument. It first points to section 102 of the Act, which requires the FAA generally to consider economic and competitive factors when making decisions "in the public interest." 49 U.S.C. app. § 1302(a) (1988). Northwest also relies upon section 502(a)(5) of the Airport and Airways Improvement Act, which requires that "all airport and airway programs" be administered in accord with section 102 and "with due regard for the goals expressed therein [such as] fostering competition." 49 U.S.C. app. § 2201(a)(5) (Supp. II 1990). These general provisions add to the list of "relevant factors" in the PFC statute. According to Northwest, these provisions required the FAA to consider the potential economic and competitive burden its decision would place on Northwest and the airline industry.

■ We do not agree that the general language of these sections required the FAA to evaluate either the possibility that its decision would harm Northwest financially or the more remote chance that its decision would lead to a decline in airline competition. We begin by noting that the "public interest factors" set forth in § 102 of the Federal Aviation Act, 49 U.S.C. app. § 1302(a), do not apply of their own force to the FAA's administration of the PFC statute. Section 102 lists factors that the Civil Aeronautics Board ("CAB") was to consider when regulating for the "public convenience." Because the CAB's remaining regulatory functions were transferred to the Department of Transportation, 49 U.S.C. app. § 1551(b)(1)(E), and derivatively to the FAA, 49 C.F.R. § 1.47 (1992), after the CAB's abolition in 1985 the § 102 criteria bind the FAA when performing former CAB functions. But the PFC program, which was not established until 1990, was never administered by the CAB. Thus, § 102 has no direct bearing on the PFC program.

■ If the general criteria of § 102 have any bearing on the PFC program at all, it can only be through the provision of the Airport and Airways Improvement Act which requires that "all airport and airway programs ... be administered in a manner consistent with the provisions of section[ ] 102."

49 U.S.C. app. § 2201(a)(5). Nonetheless, we cannot conclude that a general congressional directive to give "due regard" to goals such as "fostering competition," id., required the FAA to factor into its PFC approval calculations the possibility that Northwest would make an independent business decision to internalize the cost of the PFC rather than passing it on to its customers, thereby causing the airline possibly to decrease the number of flights it offers through Memphis, thereby having some effect on competition in the airline industry.

In *Horizon Air Industries v. DOT*, 850 F.2d 775 (D.C.Cir.1988), we held that § 102 did not require the FAA expressly to consider the effect on competition that would result from its decision to award an exclusive commuter airline route to a particular carrier. Rather, we held that § 102 "merely stated as a general goal 'maximum reliance on competitive market forces,' 49 U.S.C. app. § 1302(a)(4); [and that] this generalization can hardly be read as a clear directive to focus on competitive effects in inherently non-market-oriented proceedings for award of international routes." *Id.* at 779. While the PFC approval process may not share the "inherently non-market-oriented" nature of the route allocations considered in *Horizon,* the result is the same. For Congress to set a goal that the FAA should in general rely on competitive market forces is not to say that it must engage in a calculation of the precise economic effects in every instance, especially where those effects are quite remote from the factual question posed by the relevant statute, here simply "capacity." We conclude, therefore, that the general "public interest" provisions of the Federal Aviation Act did not require the FAA to consider either the possibility that its decision would cause Northwest economic pain or the more remote prospect that its ruling would, in turn, adversely affect airline competition.

### C. *FAA's Approval of Alternative Projects*

Northwest next raises two challenges related to the FAA's acceptance of Memphis's alternative "noise compatibility project" as a basis for approving the Memphis PFC. Northwest first argues that the FAA's policy

of approving applications to impose PFCs for alternative uses violates the plain language of the PFC statute. Even if the "alternative use" policy is valid, however, Northwest argues that the FAA's decision must be set aside because Memphis disregarded its statutory obligation to consult with the airline regarding its alternative noise compatibility project before filing its application to impose a PFC. We consider these challenges in turn.

### 1. The FAA's "Alternative Use" Approval Policy

■ The PFC statute requires that the FAA only grant "authority to impose a fee under [the PFC statute] *to finance specific projects.*" 49 U.S.C. § 1513(e)(2) (emphasis added). Northwest contends that the FAA's policy of approving projects "in the alternative" violates this statutory command because it allows airport authorities to impose a PFC without first selecting a specific use for the funds. We disagree.

FAA regulations authorize airport agencies to "apply for the authority to *impose* PFCs in advance of . . . an application to *use* PFC revenue," 14 C.F.R. § 158.25(a) (1993) (emphasis added), provided that the airports' applications include a "description of alternative uses of the PFC revenue to ensure that such revenue will be used only on eligible projects in the event the proposed [primary] project is not [ultimately] approved," *id.* § 158.25(b)(14)(ii). The selection among these approved projects is made at a later date—when the airport authorities apply for FAA's permission to *use* the PFC revenues on one or more of these approved projects. *See id.* § 158.25(c)(2).

As Northwest points out, by requiring FAA to approve requests "to impose" a PFC only "to finance specific projects," 49 U.S.C. app. § 1513(e)(2), Congress plainly intended to link the power to collect PFC revenues with the duty to spend these funds on particular projects. In this way, Congress ensured that PFCs would be imposed only to fund "eligible airport related projects." *Id.* § 1513(e)(2)(B). However, the statute does not speak to whether the FAA must identify a *single* "eligible airport related project" at

the time it authorizes imposition of a PFC or whether it may approve a *group* of eligible projects and later decide which of these eligible projects will ultimately be funded.

In light of this statutory silence, we move on to the second step of the *Chevron* analysis and ask whether the FAA's adoption of a two-step approval process "is based on a permissible construction" of the PFC statute. *Chevron,* 467 U.S. at 837, 104 S.Ct. at 2779. We conclude that it is.

Northwest's objection to the FAA's "in the alternative" approval process is that the policy will lead to "all kinds of administrative artifice" because airport authorities will petition to impose PFCs for backup projects that clearly meet the criteria for PFC eligibility, but which the airports have no real intent to pursue. Petitioner's Reply Br. at 9. Northwest thus raises the specter of airports collecting PFC revenue now, only to spend it later on non-PFC eligible projects. Yet, we fail to see the danger.

FAA regulations require that airport authorities applying for permission to impose a PFC before seeking authority to use the PFC funds must provide the FAA with a description of alternative PFC-eligible uses for the funds in order "to ensure that [PFC] revenue will only be used on eligible projects." 14 C.F.R. § 158.25(b)(14)(ii). Once the airports are ready to spend the monies they have collected, they must again obtain the FAA's blessing of their proposed projects. *See id.* § 158.25(c)(2). The agency thus checks twice to ensure that PFC funds are spent only on "eligible airport related projects." These regulatory safeguards lead us to conclude that the FAA's two-step approval process is both "reasonable and consistent with the statute's purpose." *Nuclear Info. Resource Serv.,* 969 F.2d at 1176. It is therefore entitled to deference.

### 2. Memphis's Failure to Consult With the Airlines Regarding its Proposed Backup Project

■ The PFC statute requires that "[b]efore submission of an application under this paragraph, a public agency shall provide reasonable notice to, and an opportunity for

consultation with, air carriers operating at the airport." 49 U.S.C. app. § 1513(e)(11)(C). This consultation must "provide air carriers [with a] description of projects [and] justifications for projects" to be funded through the imposition of PFCs. *Id.* Northwest argues that Memphis's failure to consult with the airline regarding its alternative noise compatibility project before applying for permission to impose a PFC violated the express command of the PFC statute. We agree.

The FAA contends that Memphis's failure to consult Northwest about its alternative project was not unlawful because the airline will be consulted regarding the noise compatibility project before Memphis seeks the FAA's permission to spend its PFC funds. *See* 14 C.F.R. § 158.25(c)(2). But we cannot reconcile the agency's post-hoc consultation mechanism with the plain language of the statute, which requires consultation *"before submission of [a PFC] application."* 49 U.S.C. app. § 1513(e)(11)(C) (emphasis added).

We therefore hold that the FAA's approval of the Memphis PFC violated the PFC statute insofar as it was based on a backup project for which no prior consultation with the airlines had occurred. Any attempt by Memphis to use its PFC funds to finance its noise compatibility project would therefore be unlawful. However, Memphis did consult with Northwest and the other airlines regarding its proposed primary projects before it applied to the FAA for permission to impose the PFC. Thus, with respect to the primary projects, no statutory violation occurred and Northwest can claim no harm. Memphis's use of its PFC revenues to finance these primary projects would thus be unproblematic.

D. *FAA's Imposition of PFCs on Frequent Flyer Passengers*

 Finally, Northwest argues that by permitting Memphis to impose PFCs on passengers flying on no-fare "frequent flyer" tickets, the FAA violated the plain language of the PFC statute, which permits the FAA to authorize PFCs only "for each *paying passenger* of an air carrier enplaned at" the imposing airport. 49 U.S.C. app. § 1513(e)(1) (emphasis added). We do not decide this question, however, because Northwest failed properly to raise this issue before the agency and is thus barred by statute from presenting this claim in court.

The judicial review provision of the Federal Aviation Act states that "[n]o objection to an order of [the FAA] shall be considered by the court unless such objection shall have been urged before [FAA] or, if it was not so urged, unless there were reasonable grounds for failure to do so." 49 U.S.C. § 1486(e). We have in the past construed this section strictly. *See USAir, Inc. v. DOT*, 969 F.2d 1256, 1259 (D.C.Cir.1992). *See also Horizon Air Indus., Inc. v. DOT*, 850 F.2d 775, 780 (D.C.Cir.1988).

Northwest nevertheless offers two reasons why we should reach the merits of its frequent flyer claim. First, Northwest argues that it did "urge" its frequent flyer objection before the FAA as required by § 1486(e). To make this claim, Northwest points to several communications between the airline and the FAA in which Northwest objected to the imposition of PFCs on frequent flyer customers. However, these letters were addressed to FAA officials in Washington, D.C., rather than to "the FAA Airports office identified in the Federal Register notice" as the place to submit public comments regarding the Memphis PFC application. 14 C.F.R. § 158.27(f)(2) (1993). These letters were thus directed to the wrong individuals to be considered in the context of the Memphis application. Furthermore, Northwest's communications failed even to mention the pending PFC application to which they allegedly pertained. Instead, the letters merely requested that the FAA generally "reexamine [its] regulations with respect to their applicability to frequent flyer awards and provide the industry with a clear statement" of its policy.

Given the generality of Northwest's submissions and the airline's complete failure to comply with the procedural requirements set forth in the *Federal Register* for commenting on the Memphis PFC application, it is little wonder that its frequent flyer objections did not become a part of the FAA's administra-

tive record and were not addressed in the agency's decision approving the Memphis PFC. Under these circumstances, we cannot say that Northwest "urged" its objections before the FAA within the meaning of § 1486(e).

 Northwest next argues that we should address its frequent flyer argument, despite its failure to exhaust administrative remedies, because the FAA's imposition of PFCs on frequent flyers clearly exceeds the authority granted the agency under 49 U.S.C. app. § 1513(e). Northwest relies on *Washington Association for Television and Children [WATCH] v. FCC*, 712 F.2d 677 (D.C.Cir.1983), which suggested in dicta that a party need not exhaust administrative remedies to challenge agency action that is " 'patently in excess of [the agency's] authority.' " *Id.* at 682 (quoting *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 312 n. 10, 99 S.Ct. 1123, 1129 n. 10, 59 L.Ed.2d 333 (1979) (dicta)).

However, several recent decisions of this Court have squarely rejected Northwest's argument and have held that a party's failure to raise an issue in the context of an administrative proceeding will not be excused merely because the litigant couches its claim in terms of the agency's exceeding its statutorily-defined authority or "jurisdiction."[3] *Mitchell v. Christopher*, 996 F.2d 375 (D.C.Cir.1993); *USAir, Inc. v. DOT*, 969 F.2d 1256 (D.C.Cir.1992); *Linemaster Switch Corp. v. EPA*, 938 F.2d 1299 (D.C.Cir. 1991); *Natural Resources Defense Council v. Thomas*, 805 F.2d 410 (D.C.Cir.1986). We have recognized that to adopt a contrary rule "permitting a petitioner to bring a statutory challenge to an agency's action directly to this court 'would infringe on agencies' rightful role in statutory construction under the *Chevron* framework.' " *USAir*, 969 F.2d at 1260 (quoting *Linemaster*, 938 F.2d at 1308–09). We therefore hold that Northwest was required to raise its frequent flyer objection before the FAA in the context of the Mem-

phis PFC proceeding and that its failure to do so precludes our resolution of that dispute.

## III. CONCLUSION

The FAA's decision approving Memphis's primary projects and authorizing a $3.00 PFC at Memphis International Airport was based on a reasonable interpretation of the PFC statute. We therefore dismiss Northwest's petition in large part. However, because Memphis's failure to consult with Northwest and other airlines regarding its alternative noise compatibility project before applying for permission to impose the PFC violated the PFC statute, we hold that Memphis may not use its PFC revenues to finance this alternative project.

*So ordered.*

STEPHEN F. WILLIAMS, Circuit Judge, concurring:

I agree with the majority opinion but write separately to respond to a subtle argument offered by the petitioner in favor of its claim that the FAA should consider the possible *negative* effect of the fee on the "capacity ... of the national air transportation system". See 49 U.S.C. app. § 1513(e)(2)(B)(i) (Supp. II 1990). The FAA justified imposition of the fee on the basis of its conclusion that investment of its proceeds in airport improvements would enhance that capacity, Record of Decision at 3, thereby satisfying one of the criteria for imposition of the fee (criteria specified by Congress as alternatives). Northwest argues that the fee in fact will render some flights unprofitable (or insufficiently profitable to justify their continuation), will therefore cause it to offer fewer flights, and will thus *diminish* the overall offerings of "the national air transportation system". See Maj. Op. at 68–69; Petitioner's Br. at 21–23.

---

3. While not explicitly relied upon by Northwest, we recognize that our decision in *Railroad Yardmasters v. Harris*, 721 F.2d 1332, 1338 (D.C.Cir. 1983), did suggest that questions of agency "power or jurisdiction" may be raised on appeal "even if not initially asserted before the [agen-

cy]." However, subsequent decisions have limited the *Yardmasters* exception to the exhaustion requirement to "challenges that concern the very composition or 'constitution' of an agency." *Mitchell*, 996 F.2d at 378.

The FAA was, I believe, justified in not pursuing this complex contention, even though it appears to raise a perfectly legitimate empirical question. First, the FAA may reasonably read the statute's reference to capacity as referring simply to the physical capacity of the air transportation system's facilities on the ground, not the totality of the system, as Northwest suggests. Second, even if capacity were to be viewed in the sense Northwest contemplates, the statute does not clearly require that the FAA consider every single factor that might affect it, no matter how remotely. Accurately assessing Northwest's thesis would require careful evaluation of elasticity of demand in all the city-pair markets involved in use of Memphis International Airport; the ultimate use of the airplane capacity released by Northwest's possible reduction in service (the planes are not going to disappear, after all); and the tendency of the improvements funded by the fee to produce convenience advantages that might offset the negative effects of the fee itself. Besides its enormous complexity, the inquiry would in all likelihood yield no certain answer. In the absence of very clear language, which the statute lacks, we cannot read it as compelling such a study.