SOUTHEAST QUEENS CONCERNED NEIGHBORS, INC. and the Committee for Better Transit, Inc. Petitioners,

v.

FEDERAL AVIATION ADMINISTRATION, U.S. Department of Transportation, and United States of America Respondents,

Port Authority of New York and New Jersey, Intervenors.

No. 99–4173.

United States Court of Appeals, Second Circuit.

Argued: Sept. 7, 2000

Decided: Oct. 12, 2000

Steven De Castro, Law Office of Steven De Castro, New York, N.Y. for Petitioner Southeast Queens Concerned Neighbors, Inc.

William K. Guild, New York, N.Y. for Petitioner The Committee for Better Transit, Inc. (on submission).

Irene M. Solet, Civil Division, U.S. Department of Justice, Washington D.C. (Jacob M. Lewis, Attorney, David W. Ogden,

Acting Assistant Attorney General, Jonathan W. Cross, Office of the Chief Counsel, Federal Aviation Administration, on the brief) for Respondents Federal Aviation Administration, United States Department of Transportation, and United States of America..

Milton H. Pachter, New York, N.Y. (Arthur P. Berg, Carlene V. McIntyre, Anne M. Tannenbaum, on the brief) for Intervenors Port Authority of New York and New Jersey.

Stewart D. Aaron and Moon S. Kim, Dorsey & Whitney LLP, New York, N.Y. submitted a brief for Amici Curiae New York City Council Members Julia Harrison and Stephen DiBrienza.

Before: MESKILL, CALABRESI, KATZMANN, Circuit Judges

KATZMANN, Circuit Judge:

Petitioner Committee for Better Transit, Inc. ("CBT") petitions for review of a decision of the Federal Aviation Administration ("FAA"), which granted permission to the Port Authority of New York and New Jersey ("Port Authority") to collect fees from passengers at New York City area airports in order to build a Light Rail System ("LRS") connecting JFK Airport with several local transit stations. CBT contends that the FAA's decision should be vacated because the portion of the Port Authority's proposed project connecting JFK Airport to the Jamaica Transit Station is not "adequately justified" as is required by the enabling statute, 49 U.S.C. § 40017(d)(3). For the reasons set forth in this opinion, we deny the petition for review.[1]

## BACKGROUND

The Port Authority proposes to build a LRS connecting JFK Airport ("JFK") with New York City's mass transit system and the Long Island Railroad ("LIRR"). The Port Authority contends that the LRS will relieve congestion in and around the airport, provide better ground access to JFK, and enhance the capacity of the airport by enabling it to serve more air passengers. The proposed LRS has three components: (1) a Jamaica–JFK link ("Jamaica segment"), connecting the airport with the Jamaica Transit Station, and thereby with the Long Island Railroad ("LIRR") as well as the "J," "E," and "Z" trains on the New York City subway system and multiple city bus lines; (2) a Howard Beach–JFK link, connecting the airport with rental car agencies as well as the Howard Beach Station of the "A" train on the New York City subway system; and (3) a Central Terminal Area ("CTA") segment, providing LRS service to the various airlines around the JFK terminal. In 1997 the Port Authority applied to the FAA for permission to collect a Passenger Facility Charge ("PFC") of $3 per passenger at JFK, LaGuardia Airport, and Newark International Airport to finance the construction of the LRS.

The FAA, as representative of the Secretary of Transportation, is authorized to allow public agencies to impose a PFC on each paying air passenger at airports in order for the applying agency to finance an "eligible airport-related project." 49 U.S.C. § 40117(b). To gain FAA approval for PFC collection, two primary regulatory hurdles must be surmounted. In accordance with the National Environmental Policy Act ("NEPA"), the FAA must compile "a detailed statement ... on—(i) the environmental impact of the proposed action, [and] (ii) any adverse environmental effects which cannot be avoided should the proposal be implemented ...". 42 U.S.C. § 4332(C)(i) and (ii). The FAA ultimately

---

1. By a separate summary order filed today, we also deny the petition for review of Southeast Queens Concerned Neighbors, Inc. ("SQCN"), which claims that the FAA's Record of Decision should be vacated because vital information was allegedly omitted from the Final Environmental Impact Statement, upon which the FAA relied in approving the project.

did so, preparing a Final Environmental Impact Statement ("FEIS") and submitting it for the requisite public comment and review. On July 18, 1997, after the comment period had ended, the FAA issued a final decision concluding that the FEIS satisfied the requirements of NEPA.

Subsequently, on July 21, 1997, the Port Authority submitted to the FAA an application to collect PFCs of $3 per passenger (up to a total of $823 million) at JFK, Newark, and LaGuardia airports to finance the construction of the LRS.[2] As required by the statute and implementing regulations, 14 C.F.R. § 158.27(c)(2), on July 29, 1997, the FAA published a notice in the Federal Register soliciting comments on the Port Authority's application. The FAA received comments from the Air Transportation Association of America ("ATA"), the City of New York, and the Metropolitan Transit Authority. After the period for public comment had ended, the FAA expressed concern that the project application was not adequately justified, as required by 49 U.S.C. § 40117(d)(3). The FAA therefore solicited and received supplemental information from the Port Authority.[3] The FAA's subsequent Record of Decision ("ROD"), issued on February 9, 1998, relied heavily on the supplemental information provided by the Port Authority *ex parte* and concluded that the LRS was "adequately justified." In the 46–page 1998 ROD, the FAA substantially approved the Port Authority's application to collect and use the PFCs.

The ATA then filed a petition for review in the United States Court of Appeals for the D.C. Circuit, pursuant to 49 U.S.C. § 46110. The D.C. Circuit rejected two statutory challenges to the FAA's ROD, but upheld the ATA's claim that the notice and comment procedure was defective insofar as the public was not given an oppor-

tunity to comment on the supplemental information submitted by the Port Authority. *See Air Transp. Ass'n of America v. FAA,* 169 F.3d 1, 6–9 (D.C.Cir.1999). The D.C. Circuit remanded the case to the FAA for further proceedings.

On April 13, 1999, the FAA initiated another round of public comment, this time with respect to the information submitted by the Port Authority after the period for public comment. At this stage CBT submitted additional comments, raising the concerns it now brings before this court. In a ROD issued on August 16, 1999, the FAA again granted the Port Authority permission to collect and use PFCs for the LRS project.

## A. The 1999 Record of Decision

The 1999 ROD incorporated verbatim the discussion contained within the 1998 ROD and added ten pages of discussion which addressed the comments and challenges made during the second public comment period. The FAA found that each of the three segments of the LRS "preserves or enhances capacity" at JFK airport, thus meeting the requirements of 49 U.S.C. § 40117(d)(2). The ROD noted that the FAA had questioned whether there was "adequate justification" for the project, but that information provided by the Port Authority about the impact of the LRS through the year 2013 satisfied those concerns. The information provided by the Port Authority showed that the LRS would "enable an additional 3.35 million annual air passengers to get to the airport in the year 2013 than would otherwise be able to without the LRS." This was an important finding because the air capacity of JFK was estimated to be more than 9 million passengers per year greater than its ground capacity by 2013. The FAA

---

**2.** Under FAA regulations, an application for permission to collect and use PFCs must include certification that NEPA review has been completed and that the FAA has approved the requisite environmental findings. *See* 14 C.F.R. § 158.25(c)(1)(ii)(B).

**3.** In December 1997 petitioner CBT also submitted letters and other materials to the FAA in opposition to the PFC application after the period for public comment had closed.

found that the LRS ridership forecasts for 2013 provided by the Port Authority were reasonable.

The ROD acknowledged challenges from petitioners and others that the Jamaica segment of the LRS was not supported by adequate justification because of its lack of utility and high cost. The ROD responded by pointing out that almost two-thirds of the LRS riders coming from off-airport locations will be carried on the Jamaica segment and that Jamaica provides connections to NYC Transit and the LIRR not available at the Howard Beach Station.

On October 14, 1999, CBT and SQCN submitted a petition for review with this court.

### DISCUSSION

CBT offers three related arguments as to why the FAA's decision should be vacated insofar as it approved the funding and construction of the Jamaica segment of the LRS.[4] First, CBT argues that the FAA's decision is deficient because it failed to articulate a discernible or coherent standard for determining whether each project included in the Port Authority's application was adequately justified as required by 49 U.S.C. § 46117(d)(3). Second, CBT asserts that the FAA committed reversible error in finding that the Jamaica segment of the project is adequately justified. Finally, CBT raises problems with the data employed by the Port Authority and FAA concerning ridership estimates. We will consider in some detail CBT's first argument, as it raises a novel question of law concerning the statute's requirement that the FAA find "adequate justification" for projects before approving the collection and use of PFCs. We also address the second and third arguments raising challenges to the findings of the FAA. First, however, we consider intervenor Port Au-

thority's claim that CBT's challenge should not be reviewed because it is untimely.

### A. Timeliness.

■ In assessing the Port Authority's argument, we note initially that an appeal from an order of the FAA must be taken no later than 60 days after the order is issued. *See* 49 U.S.C. § 46110(a). While the parties agree that CBT filed its appeal within 60 days of the 1999 ROD, the Port Authority contends that CBT's petition is untimely because CBT could have but did not raise its challenges after the FAA issued its 1998 ROD.[5] The Port Authority correctly points out that only the ATA appealed the 1998 ROD.

The Port Authority asserts that CBT was clearly aware of the proceedings leading up to the 1998 ROD, having submitted in December 1997 at least two different facsimiles containing comments and other materials opposing the approval of the PFC. The Port Authority points to caselaw stating that: "It is elementary that where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand." *Northwestern Indiana Telephone Co. v. FCC*, 872 F.2d 465, 470 (D.C.Cir.1989). This rule furthers procedural efficiency, and "prevents the bizarre result that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *Id.* (citation and internal quotation marks omitted).

While we do not question the language quoted from *Northwestern Indiana,* the facts of that case differ from the case before us. In *Northwestern Indiana* petitioners had participated in the first appeal. Here, CBT did not participate in the prior appeal by the ATA. More important for

---

4. CBT does not challenge the Howard Beach or CTA segments of the LRS project.

5. We observe at the outset that the FAA does not join in the Port Authority's claim that

CBT's petition for review is untimely. At oral argument counsel for the FAA indicated that its position is that CBT's petition is in fact timely.

our purposes are the differences in the scope and nature of the remand issued in each case. In *Northwestern Indiana*, the initial remand directed the administrative agency to clarify certain elements of the basis for its decision. *See* 872 F.2d at 468. On remand the agency did not assess data previously unknown to the petitioners.

The case at hand presents a different scenario. In the first appeal, the D.C. Circuit vacated and remanded the 1998 ROD because the FAA improperly relied on supplemental information that it solicited and accepted from the Port Authority, without providing adequate notice and opportunity for public comment.[6] *See ATA*, 169 F.3d at 6–8. The D.C. Circuit's decision also recognized that the ATA was challenging the FAA's decision as being arbitrary and capricious and that the PFC application lacked adequate justification. The court did not reach those issues, however, stating:

> We think it appropriate, in light of the necessity to remand this proceeding to allow the airlines adequate opportunity to comment on the application, that we not decide this issue on the artificially restricted record before us. By the same token, we defer dealing with petitioner's claims that the FAA did not adequately weigh the costs of this project against the benefits. *Id.* at 8.

The Port Authority argues that the scope of the remand was narrow and restricted to the supplemental information that had been submitted to the FAA by the Port Authority after the public comment period had expired ("post-comment"). While the scope of remand may have indeed been narrow, the crucial fact is that when it issued the 1998 ROD, the FAA relied on the information provided post-comment in deciding that the project

was adequately justified. Indeed, the FAA's concern that the project lacked adequate justification was precisely the reason the Port Authority submitted the post-comment information. The post-comment information included estimates that an additional 3.35 million annual air passengers would be able to travel through JFK in the year 2013 through the LRS, resulting in a "substantial capacity enhancement effect" at JFK. This information goes directly to the question of whether the project was adequately justified. The substantive challenge raised by CBT on this appeal is that adequate justification was lacking, and CBT's challenge includes disputes as to the accuracy of the ridership projections in the post-comment information provided by the Port Authority. Therefore, CBT's decision whether to appeal the 1998 ROD may have been affected by its lack of access to the post-comment information provided to the FAA.

Because the post-comment information is relevant to CBT's current challenge, we find that CBT's claim is timely. Adding force to this view is the fact that the D.C. Circuit deferred entirely any consideration of the substantive arguments now at issue. Thus we agree with the FAA's assertion at oral argument that CBT's challenge is timely. We now proceed to consider the merits of CBT's challenge.

## B. CBT's Arguments.

▮ CBT's basic argument is that each segment of the LRS must be evaluated separately under a cost/benefit analysis and that under such an analysis the Jamaica segment of the LRS lacks adequate justification. As CBT concedes, no Circuit has addressed the statutory requirement

---

6. As both the 1998 ROD and the 1999 ROD acknowledge, after the first official comment period was closed on August 28, 1997, the FAA "received submittals of clarifying information from the Port Authority on September 9, September 12, September 17, September 19, September 29, October 16, October 17, October 29, November 4, December 4, December 12, 1997, and January 23, 1998. In addition, the FAA met with representatives from the Port Authority, the City of New York, and the Air Transport Association of America (ATA) at various times during the deliberation process."

for a finding of "adequate justification."[7] This is a question of statutory interpretation and we begin with the text of the statute. Title 49 § 40117(d), concerning the approval of PFC applications, provides in relevant part:

> (d) Limitations on approving applications.—The Secretary may approve an application that an eligible agency has submitted under subsection (c) of this section to finance a specific project only if the Secretary finds, based on the application, that—
>
> (1) the amount and duration of the proposed passenger facility fee will result in revenue (including interest and other returns on the revenue) that is not more than the amount necessary to finance the specific project;
>
> (2) each project is an eligible airport-related project that will—
>
> (A) preserve or enhance capacity, safety, or security of the national air transportation system;
>
> (B) reduce noise resulting from an airport that is part of the system; or
>
> (C) provide an opportunity for enhanced competition between or among air carriers and foreign air carriers; and
>
> (3) the application includes adequate justification for each of the specific projects; . . . .

The statute itself does not explain what is meant by "adequate justification." But its words and structure suggest that Congress did not intend to impose a particular form of cost/benefit analysis. The U.S. Supreme Court has explained that, "[w]hen Congress has intended that an agency engage in a cost-benefit analysis, it has clearly indicated such intent on the face of the statute." *American Textile Manufacturers Institute v. Donovan*, 452

U.S. 490, 510, 101 S.Ct. 2478, 69 L.Ed.2d 185 (1981). Section d(1) of the statute requires that funds raised through the PFC charges not exceed the cost of the project. Beyond that, there is no reference to costs and benefits or their equivalent, the factors that should be examined in a cost/benefit analysis, or the weight that should be given to each factor. Furthermore, while Congress mandated that the FAA prescribe regulations as to certain parts of the statute, Congress did not require that regulations be developed further defining "adequate justification". *See* 49 U.S.C. § 40117(i). This indicates that Congress did not contemplate a rigid test for finding adequate justification.

Supporting this conclusion is the fact that the PFC statute anticipates that applications will be submitted for many different kinds of projects. Projects are eligible for PFC funding if they either (1) preserve or enhance capacity, safety, or security of the national air transportation system; (2) reduce noise resulting from an airport that is part of the system; or (3) provide an opportunity for enhanced competition between or among air carriers and foreign air carriers. 49 U.S.C. § 40117(d)(2). Given the varied nature of the projects anticipated, it is reasonable to assume that Congress intended that the FAA have discretion in deciding whether applications are adequately justified.

CBT contends that legislative history supports its interpretation that adequate justification requires a more formal and consistent analysis. Specifically, CBT cites to the House of Representatives Report ("House Report") accompanying H.R. 2739, the bill which added the "adequate justification" requirement. The House Report notes that the FAA had refused to grant some PFC applications where there

---

7. ATA's petition for review from the 1998 ROD also raised the suggestion that a cost/benefit analysis is required. However, while the D.C. Circuit did rule out certain specific bases for arguing that a cost/benefit analysis is mandated, including Executive Or-

der No. 12,893, 59 Fed.Reg. 4233 (1994) and an interim FAA policy guidance, *see* 62 Fed. Reg. 34,108, 34,109 (June 24, 1997), that court did not definitively decide whether a cost/benefit analysis is required by the statute. *See ATA,* 169 F.3d at 8–9.

had not been "adequate justification demonstrating that the proposed project would provide benefits to air transportation, commensurate with the cost of the project. The reported bill clarifies that the FAA has the authority to continue to insist that the projects be supported by adequate justification." H.R. No. 103–240, at 27–28 (1993).

CBT argues that the FAA's decision is fatally flawed because it failed to apply a discernible standard in determining whether the various segments of the project were supported by adequate justification. CBT notes that the 1998 ROD concluded that, while the addition of 134,000 air passengers in 2003 was not sufficient, a projection of 3.35 million passengers in 2013 constituted adequate justification. CBT attacks this analysis as "subjective and idiosyncratic" and "useless as a guide" for future applicants.

In the 1999 ROD the FAA specifically takes the position that "there is neither a statutory nor a regulatory requirement for the FAA to conduct cost/benefit analysis as part of its review process of PFC applications." The FAA further notes that while it does review expected costs and benefits in considering PFC applications, there is no requirement that a formal cost/benefit analysis must be conducted, or that approval of an application must be contingent on such an analysis.

The FAA's conclusion as to the nature of its duty when determining "adequate justification" under 49 U.S.C. 40117(d)(3) is an agency's interpretation of a statute it administers. As noted above, Congress has not "directly spoken to the precise question at issue" in the language of the statute and therefore the agency's interpretation will be upheld as long as it is reasonable and consistent with the statute's purpose. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–44, 104 S.Ct. 2778, 81 L.Ed.2d 694

(1984); *Air Transp. Ass'n of America v. FAA,* 169 F.3d 1, 4–5 (D.C.Cir.1999) (a challenge to the FAA's interpretation of the PFC statute is reviewed with *Chevron* deference); *Northwest Airlines, Inc. v. FAA,* 14 F.3d 64, 68 (D.C.Cir.1994) (same).

We conclude that the FAA's interpretation of the PFC statute is reasonable and consistent with the statute's purpose. There is nothing in the statute or legislative history that suggests that Congress intended the FAA to employ a formal cost/benefit analysis or other test of general applicability in determining whether "adequate justification" for a specific project has been demonstrated. Although a decision of the FAA concerning adequate justification would likely be vacated if it did not provide objective and articulable reasons in support of its conclusion, we cannot find that Congress intended anything more.

■ Similarly, given that the statute is not clear as to the meaning of the words "each of the specific projects," the FAA is entitled to deference regarding a reasonable construction of how narrowly and under what criteria each "project" should be parsed in conducting its analysis. Thus we accept the FAA's interpretation that the three segments of the LRS need not, as CBT contends, be considered as three entirely separate projects.[8]

**C. Applying the facts to the law.**

■ We review the FAA's determination that the Port Authority's application is adequately justified under the Administrative Procedure Act and set aside the agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law ...." 5 U.S.C. § 706(2)(A); *see also National Black Media Coalition v. FCC,* 822 F.2d 277, 280 (2d Cir.1987). Here the FAA issued a 54 page decision which considered the poten-

---

**8.** The FAA's brief notes that neither the Jamaica nor Howard Beach segments can be evaluated independently from the CTA loop segment since the CTA loop is necessary to connect riders to the airport.

tial costs and benefits of the Port Authority project. The FAA examined the current and future congestion of the roadways leading to JFK, and noted the effect that the LRS would have in reducing the travel time to JFK from Manhattan and in providing a more reliable means of getting there. The ROD states that the LRS plan "received widespread regional support, including support from the governor of New York, the mayor of New York City, the New York City Council, the Queens Borough President, the three Community Boards most affected by the construction of the Jamaica component [of the LRS], the City Planning Commission, and members of Congress from the region."

Further evidence of the FAA's diligence is the fact that, before the 1998 ROD was issued, the FAA itself suggested that adequate justification was lacking. The Port Authority then provided the FAA with ridership estimates forward another 10 years, estimating that the LRS would enable 3.35 million additional air passengers to reach JFK annually by 2013. As reviewed *infra,* these estimates were determined to be credible. This sequence of events suggests that the FAA seriously weighed the merits and deficiencies in the LRS plan and that its determination that the plan was adequately justified is reasonable.

Contrary to the arguments by CBT, the record also suggests that the FAA considered the incremental utility of the Jamaica segment of the LRS. The FAA noted that "almost two-thirds of ridership on the LRS coming from off-airport locations will be carried on the Jamaica component of the LRS." The ROD also relied on the fact that the Jamaica segment links JFK passengers to the LIRR and to multiple subway and bus lines, while the Howard Beach segment only links JFK to the "A"

subway line. Without the Jamaica segment, therefore, there would be no link to Long Island.

While CBT may have legitimate arguments that a different transportation system would have been more cost effective or preferable, this court has no authority to require the FAA to design or implement alternative projects. The FAA is charged, *inter alia,* with determining whether the proposed project meets one of the specified purposes in 49 U.S.C. § 40117(d)(2) and that the project is adequately justified under (d)(3). This court must uphold the FAA's determination unless the decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 5 U.S.C. § 706(2)(A). In this case we are satisfied that the FAA's determination should be upheld.

### D. Reliability of the ridership data.

 CBT and the amici also assert that the data relied on by the Port Authority and the FAA, projecting the number of riders that will use the LRS system, are unreliable.[9] CBT is thus arguing that at least some of the findings of fact relied on by the FAA, in particular the finding that the LRS "will enable an additional 3.35 million annual air passengers to use JFK in 2013," are erroneous. Under the PFC statute, however, the FAA's findings of fact, "if supported by substantial evidence, are conclusive." 49 U.S.C. § 46110(c). The "substantial evidence" test was recently explained by this court as requiring "less than a preponderance of the evidence but more than a scintilla." *Cellular Phone Taskforce v. FCC,* 205 F.3d 82, 89 (2d Cir.2000) (internal quotation marks and citations omitted). Furthermore, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent

---

9. New York City Council Members Julia Harrison and Stephen DiBrienza filed a brief amicus curiae with this court. Amici ask this court to vacate the FAA's 1999 ROD on the grounds that it is arbitrary and capricious because the LRS (1) does not provide a convenient option for travelers going to JFK Airport, (2) is an enormous waste of funds, and (3) will have detrimental effects on the residents of the Van Wyck neighborhoods. To the extent that amici's arguments echo those made by CBT or SQCN, they are not addressed specifically by this opinion.

an administrative agency's finding from being supported by substantial evidence." *Id.* (internal quotation marks and citations omitted).

CBT argues that the survey data do not provide a reliable guide for ridership levels in 2003, let alone 2013. CBT asserts that the survey data are unreliable because they were collected in 1993 to determine the ridership forecasts for the proposed automated gateway transit ("AGT") system, which, unlike the proposed LRS, would have offered a direct ride from Manhattan to the airports. The amici City Council members contend that the difficulty of making transfers with luggage makes potential riders much less likely to use the LRS as compared with the previously considered one-seat AGT system.

Quite obviously, the direct rail AGT system previously considered by the Port Authority is very different from the LRS that is currently under discussion. However, the Port Authority modified the original survey data, using different assumptions and "decision rules" in order to obtain ridership estimates for the current LRS project. The final study was specifically tailored to obtain ridership estimates for the LRS system that is described in the PFC application. While the final "Phase IV" study only contained ridership estimates into the year 2003, the supplemental information submitted by the Port Authority carried forward those projections into the year 2013.

Neither petitioners nor amici have challenged the statistical or analytical methods that were employed to adapt the 1993 survey data to the current LRS project. Furthermore, the data appear to have been reviewed with some scrutiny. Not only did the FAA itself review the Port Authority's analysis, it also consulted with the Federal Transit Administration ("FTA"), which evaluated the ridership data. The FTA produced a report reviewing each stage of the Port Authority's analysis and stated that the projections through 2003 "are generally valid and represent a rea-sonable and conservative approach to the estimation of ridership levels." The FAA again consulted the FTA with respect to the supplemental information projecting ridership levels from 2003 to 2013, and the FTA concluded that the Port Authority had produced "reasonable forecasts" and agreed that "the increase of 3.3 million passengers ... afforded by the LRS over the no build alternative is a credible estimate of the increase in the airport's ground capacity."

In light of the above, substantial evidence in the record supports the FAA's findings with respect to future ridership on the LRS. We further emphasize that the deferential standard of review is proper because, "in the face of disputed technical facts, a court must be reluctant to reverse results supported by ... weight of considered and carefully articulated expert opinion." *Cellular Phone,* 205 F.3d at 89 (internal quotation marks and citations omitted); *cf. Air Line Pilots Ass'n, International v. Quesada,* 276 F.2d 892, 898 (2d Cir.1960) (deferring to the FAA's expertise in a establishing regulations to carry out a statute).

## CONCLUSION

This court offers no view about the merits of the proposed project. Indeed, we are without authority to do so. Our inquiry is grounded in the largely procedural laws and precedents to which we must adhere. In our limited role, for the reasons set forth above, we find that the FAA's 1999 ROD is not arbitrary, capricious, an abuse of discretion or otherwise contrary to law. The decision to approve the Port Authority's PFC is reasonable and the petition for review is therefore denied.