

Dallas K. Mathis, Mathis & Mathis, Falls Church, Virginia, for plaintiff.

Helen F. Fahey, United States Attorney, Richard Parker, Assistant United States Attorney, Alexandria, Virginia, Charlotte Hardnet, Chief Counsel, Region III, Nora P. Koch, Assistant Regional Counsel, Office of the General Counsel, Social Security Administration, Philadelphia, PA, for defendant.

**Thomas E. GIATTINA, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**Civil A. No. 94–1263–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Feb. 28, 1996.

### MEMORANDUM OPINION

ELLIS, District Judge.

This Social Security appeal presents the question whether one who became entitled to Disability Insurance benefits ("DIB") for blindness in 1988 should have those benefits offset pursuant to 42 U.S.C. § 424a(a)(2)(b); 20 C.F.R. 404.408(a) because of that person's federal disability retirement annuity, where that person previously received DIB for blindness from 1966 to 1968.

**I**

Plaintiff Thomas Giattina suffers from retinitis pigmentosa, a progressive eye condition that causes blindness. In March 1966, he was found to be legally blind and eligible for Social Security DIB. He continued to receive these benefits until May 1968, when, despite his blindness, he began to work for the federal government. Although his blindness persisted, he continued to work for the government until May 1988, when he retired from civil service. Upon his retirement, he

once again sought DIB. Because he was still legally blind and then no longer working, he was again awarded DIB. His benefits, however, were reduced by the amount of his federal disability retirement annuity pursuant to 42 U.S.C. § 424a and 20 C.F.R. § 404.408(a), the public disability offset provision of the Social Security Act ("Act") and its implementing regulation.

Giattina challenged the applicability of this offset provision, triggering a lengthy and byzantine administrative process that bids fair to become known as the *Jarndyce v. Jarndyce* of social security law. He first requested that the Social Security Administration reconsider its determination, but that reconsideration resulted in an affirmance of the applicability of the offset provision. He then sought a hearing before an Administrative Law Judge ("ALJ"), who remanded the case to the Commissioner for reconsideration. The reconsideration confirmed that Giattina's benefits were subject to offset, and Giattina again requested a hearing before an ALJ. This time, a second ALJ found that the offset provision did not apply to Giattina. Next, the Appeals Council decided, *sua sponte*, to review the ALJ's decision, but when it discovered that no tape had been made of the hearing before the second ALJ, it remanded the case for yet another ALJ hearing. Thereafter, following yet another hearing—presumably one for which a tape was made and preserved—a third ALJ found that the offset provision did not apply.[1] The Appeals Council again decided to review the case, and then reversed the third ALJ, finding that the offset provision did apply to Giattina. This constituted the final decision of the Commissioner and Giattina sought judicial review of the agency's determination in this Court. The matter was then referred to a magistrate judge, and the parties filed cross-motions for summary judgment. The magistrate determined that the offset provision did not apply and recommended that Giattina receive benefits effective November 1988.[2]

The Commissioner objected to the magistrate's recommendation, and the matter is now before the Court on that objection. This Court must therefore "make a *de novo* determination of those ... recommendations to which an objection is made." 28 U.S.C. § 636(b)(1).

## II

Because this is a dispute about the meaning of a regulation, analysis properly begins with a consideration of the pertinent regulatory language. In pertinent part, the regulation provides that:

(a) [DIB is subject to reduction if]:

(1) The individual first became entitled to [DIB] after 1965 but before September 1981 based on a period of disability that began after June 1, 1965 and before March 1981, and

  (i) The individual entitled to the [DIB] is also entitled to periodic benefits under a workers' compensation law ... or

(2) The individual first became entitled to [DIB] after August 1981 based on a disability that began after February 1981, and

  (i) The individual entitled to the [DIB] is also, for that month, concurrently entitled to a periodic benefit (including workers' compensation or any other payments based on a work relationship)....

20 C.F.R. § 404.408(a). Giattina and the Commissioner agree that this regulation controls this case, but they interpret the regulation quite differently.

Giattina focuses on the phrase "first became entitled to [DIB]." He argues that he "first" became entitled to DIB in March 1966, when he initially received DIB for his blindness. Thus, his case, as he sees it, falls squarely within subsection (a)(1). From this, he argues that because he does not receive benefits under a workers' compensation law or plan as discussed in (a)(1)(i), his benefits

---

1. The third ALJ decided, however, that Giattina's benefits were subject to the windfall elimination provision, 42 U.S.C. § 415(a); 20 C.F.R. § 404.213(a)(2)–(3) (1994). This decision was upheld by the Appeals Council, and Giattina has not challenged it.

2. The Commissioner determined that Giattina met the Act's definition of disability on May 9, 1988. However, because the Act mandates a five-month waiting period, the Commissioner ruled that Giattina was not entitled to benefits until November 1988. *See* 42 U.S.C. § 423(c)(2).

are not subject to offset. He concedes he receives a federal pension related to his disability that is included in the "periodic benefits" referred to in subsection (a)(2)(i) of the regulation. But that provision, he contends, does not apply to him because he did not "first become entitled to [DIB] after August 1981 based on a disability that began after February 1981." 20 C.F.R. § 404.408(a)(2). To read the provision otherwise is to render the word "first" superfluous.

The Commissioner responds that Giattina's reading of the regulation is incorrect because it renders the language "based on a disability that began after February 1981" in subsection (a)(2) redundant. If the regulation referred to whether a person first received DIB after August 1981, those benefits would of course be based on a disability that began after February 1981. It would be impossible for someone to receive DIB for a disability one did not yet have. Thus, according to the Commissioner, to interpret "first become entitled to [DIB]" to mean simply the first time that one received any DIB would violate the familiar and well-settled principle of statutory construction that "courts are obliged to give effect, if possible, to every word used by the legislature." *Crestar Bank v. Neal (In re Kitchin Equipment Co., Inc.)*, 960 F.2d 1242, 1247 (4th Cir.1992); *see also Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979) (holding that courts must give effect to every word when interpreting a statute); *United States v. Hunter*, 459 F.2d 205 (4th Cir.1972) (same).

The Commissioner argues, in effect, that the key to construing and applying the regulation to these facts lies in recognizing that Giattina experienced two distinct "disabilities" in the circumstances. This follows, the Commissioner points out, from the regulation's definition of a blindness "disability" as an "inability by reason of such blindness to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he has previously engaged with some regularity and over a substantial period of time." 42 U.S.C. § 423(d)(1)(B). It further follows, the Commissioner argues, that Giattina has therefore experienced two separate "disabilities" for purposes of the statute, one lasting from 1966 to 1968 and the second beginning in May 1988. Based on the most recent "disability," Giattina first became entitled to benefits in November 1988 and therefore comes under the plain language of subsection (a)(2). Giattina's DIB, the Commissioner concludes must be reduced by the amount of his federal annuity benefits.

Clearly, there is a contest between the parties as to the proper interpretation of the regulation, and neither interpretation is without some merit. But the relevant inquiry here is not which interpretation is best, but instead whether the Commissioner's interpretation is a reasonable or permissible one. If so, the Commissioner's interpretation is entitled to deference here. *See Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *United States v. Jefferson–Pilot Life Insurance Co.*, 49 F.3d 1020 (4th Cir.1995) (applying *Chevron* deference to judicial review of an agency's interpretation of its own regulations).

By this standard, the Commissioner prevails, for her reading of the regulation, focusing on the statutory meaning of "disability," is not only reasonable, but indeed more persuasive than Giattina's. Moreover, her interpretation, unlike Giattina's, is consistent with the language and purpose of the underlying statute. Prior to 1981, DIB were subject to offset only by workers compensation plan payments. The statute was amended in 1981 to provide that DIB shall be reduced by the amount of a disability benefit under any other law or plan of the United States for "individuals who first become entitled to benefits … for months beginning after [August 1981], but only in the case of an individual who became disabled within the meaning of [42 U.S.C. § 423(d) ] after [February 1981]." Pub.L. No. 97–35, § 2208(b). It is this language that the regulation construes and implements, and it is the plain meaning of this language that compels the conclusion that Giattina's benefits should be offset. His case fits squarely within this language. Thus, as discussed above, he "first became entitled to benefits" for months beginning with Novem-

ber 1988. He also "became disabled within the meaning of" 42 U.S.C. § 423(d) after February 1981 because the statute provides that "disability" in the case of blindness means an "inability by reason of such blindness to engage in substantial gainful activity requiring skills or abilities comparable to those of any gainful activity in which he has previously engaged with some regularity and over a substantial period of time." 42 U.S.C. § 423(d)(1)(B). And thereafter, in May 1988, he became unable to engage in substantial gainful employment. In short, Giattina's case fits within the plain language of the 1981 amendment, which subjects DIB to offset by federal annuity plans.

This conclusion is also in accord with the purpose of the statute. When Congress expanded the offset provision to include federal payments from disability plans other than workers compensation plans, it chose to do so in a way carefully designed to avoid any unfairness to those who had already been receiving benefits. It would be unfair to begin suddenly to offset the DIB of one who had been receiving DIB before the enactment of the amendment and who had reasonably relied on receiving the full amount of DIB. The amendment therefore was not made applicable to those who became entitled to benefits before the enactment of the amendment. Applying the offset provision to Giattina's case, on the other hand, would not be unfair. Although he had received DIB for his blindness some twenty years in the past, he was working at the time the Act was amended and was not entitled to any DIB at that time. He therefore cannot contend that he in some way relied on the limited scope of the offset provision.

For the foregoing reasons, the Commissioner's final decision that Giattina's DIB are subject to offset to account for his federal pension annuity was correct. An appropriate order will issue.