# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

───────────

No. 99-3023WM

───────────

Hazel Fields,

        Appellant,

v.

Kenneth S. Apfel,

        Appellee.

On Appeal from the United
States District Court
for the Western District
of Missouri.

───────────

Argued: April 13, 2000
Submitted After
Supplemental Briefing: September 20, 2000
Filed: December 8, 2000

───────────

Before RICHARD S. ARNOLD, ROSS, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

───────────

RICHARD S. ARNOLD, Circuit Judge.

Hazel Fields seeks appellate review of the District Court's order upholding the decision of the Commissioner of the Social Security Administration (SSA) that Field's disability insurance benefits be reduced because she was receiving other public

disability benefits. We conclude that the Commissioner's interpretation of the SSA regulation in question is reasonable, and accordingly we affirm.

## I.

Fields was born in 1943 and has been statutorily blind since childhood. In 1974 she applied for social security disability insurance benefits. In January 1975, the SSA established a "period of disability" for Fields beginning January 31, 1974, pursuant to a special regulation concerning blindness, 20 C.F.R. § 404.1582.[1] It was determined, however, that she was not entitled actually to begin receiving benefits because she was capable of engaging in substantial gainful activity.

Fields worked continuously from January 1974 through June 1987 as a service representative for the SSA, the very agency that opposes her in this extended litigation. In August 1987, no longer able to work, she filed a claim to begin receiving her social security disability benefits and was informed she was entitled to such benefits as of

---

[1]This regulation provides as follows:

> If we find that you are blind and you meet the insured status requirement, we may establish a period of disability for you regardless of whether you can do substantial gainful activity. A period of disability protects your earnings record under Social Security so that the time you are disabled will not count against you in determining whether you will have worked long enough to qualify for benefits and the amount of your benefits. However, you will not necessarily be entitled to receive disability insurance cash benefits even though you are blind. If you are a blind person under the age of 55, you must be unable to do any substantial gainful activity in order to be paid disability insurance cash benefits.

July 1, 1987, and would begin receiving them as of December 1987, in light of the statutory five-month waiting period.

Fields was notified that her monthly primary insurance amount (PIA) was to be $333.50, effective December 1987. The method used to calculate this amount – called the average-monthly-wage (AMW) method – was the one applicable to individuals who "become disabled" before 1979. See 20 C.F.R § 404.204(a). Fields challenged the computation of her AMW, eventually seeking judicial review of the SSA's final determination on this issue.[2]

By letter dated June 21, 1993, while her case was still pending, the SSA notified Fields that it would be reducing her benefits because she was also receiving other public disability benefits (a federal disability retirement pension based on her work for the SSA). The letter stated that benefits should have been reduced beginning July 1987.

A few days later, on June 25, 1993, the District Court issued its opinion, which concluded that the SSA had used the wrong method in calculating Fields's AMW and remanded the case to the SSA for a recomputation of benefits. By letter dated August 17, 1993, the SSA notified Fields that pursuant to 20 C.F.R. § 404.408(a)(2)(i), she had been overpaid $22,664.60 during the period December 1987 to July 1993, because she had been receiving other public disability benefits, the disability pension which she had earned as an SSA employee. Section 404.408(a) provides, in pertinent part, that a reduction in social security disability benefits is required if:

> (1) The individual first became entitled to disability insurance benefits after 1965 but before September 1981 based on a period of disability that began after June 1, 1965, and before March 1981, and

---

[2]Fields v. Shalala, No. 92-4015-CV-C-9 (W.D. Mo.).

(i)  The individual . . . is also entitled to periodic benefits under a workers' compensation law . . . for that month for a  . . . disability . . . or

(2)  The individual first became entitled to disability insurance benefits after August 1981 based on a disability that began after February 1981, and

(i)  The individual . . . is also, for that month, concurrently entitled to a periodic benefit (including workers' compensation or any other payment based on a work relationship) on account of a disability . . . .

(Paragraph (2) applies to Fields's case, according to the SSA.)  The letter to Fields noted that the amount of the overpayment might be adjusted by reason of the District Court's remand.  On October 10, 1993, Fields was advised that as a result of her increased monthly benefit, as recomputed in accordance with the District Court's order, the amount of the overpayment was reduced to $21,844.70 for the period of May 1988 through September 1993.

On March 18, 1994, Fields filed a motion for contempt in the District Court, arguing that the SSA's determination regarding the overpayment and reduction of benefits was in contravention of the Court's June 25, 1993 order.  She argued that the SSA had conceded that her disability began in 1974 and that the Court's decision relied on that fact.  The contempt motion was denied by order dated October 24, 1995.  The Court held that civil contempt was not appropriate because its order dealt only with the proper formula to be used in calculating Fields's AMW and did not discuss whether a public-disability-benefit offset could apply to her.

Upon exhausting her administrative appeals on the determination that her social security disability benefits were to be reduced by the other public disability benefits she was receiving, Fields filed a new action in federal district court seeking judicial review

of this decision.[3]  Both parties moved for summary judgment.  Fields argued that for purposes of 20 C.F.R. § 404.408(a)(2)(i), her disability began on January 1, 1974, and thus that the regulation did not apply to her.  She also argued that the District Court's order in her previous case was premised on the fact that her disability began January 1, 1974, and that this holding precluded the SSA from relitigating this issue.

The Commissioner argued that the reduction regulation was correctly applied because Fields first became entitled to disability insurance benefits in July 1987 for a disability that began on that date.  According to the Commissioner, Fields's entitlement to a period of disability beginning January 1974 was for the limited purpose of protecting her insured status, but  because she performed substantial gainful activity through June 1987, she was not under a "disability" within the meaning of the Social Security Act, 42 U.S.C. § 423(d), until July 1987, the same date that she became entitled to benefits.  Thus, paragraph (2) of the above-quoted regulation did apply.

On October 21, 1997, the District Court granted the Commissioner's motion for summary judgment.  The Court concluded that the Commissioner's interpretation of the regulation in question was reasonable and thus entitled to deference.  The Court rejected Fields's issue-preclusion  argument, concluding that the Court in the previous action had not reached the precise question of whether the pre-1979 AMW method was appropriate in Fields's case.  Having ruled in favor of the Commissioner, the Court decided to remand the matter back to the Commissioner for a determination whether the overpayment assessed against Fields should be waived (see  20 C.F.R. § 404.506).

---

[3]Fields v. Chater, No. 95-4477-CV-C-6 (W.D. Mo.).

Fields filed a notice of appeal on December 15, 1997. This Court summarily dismissed the appeal for lack of jurisdiction.[4]

On May 22, 1998, the Commissioner issued a decision ordering that the overpayment (as it was then considered by SSA) be waived, so far as past payments to Fields were concerned. On August 20, 1998, Fields filed a new action in the District Court.[5] Plaintiff asserted that "it may be appropriate to combine [the new suit] with the prior action" or that "the prior action should be re-opened for a final order to be entered." She requested a final order so that she could "consider her options regarding an appeal of the Court's determination on her other issues as decided in the Court's prior opinion . . . dated 10/21/97."

The Commissioner filed a motion to dismiss, arguing that Fields had gotten the remedy she sought, and that the matter was moot. In response, Fields asserted that she "has not quite received all the remedies she has sought" and therefore, the matter was not moot. She requested that the two cases be consolidated and that a final order be issued for purposes of appeal. The District Court (understandably) questioned the correctness of this Court's dismissal of Fields's earlier appeal, but concluded that consolidation of her present action with a closed case was inappropriate and therefore granted the Commissioner's motion to dismiss. This appeal followed.

---

[4]We apparently believed the order appealed from was not final. In this we may have been mistaken. See Forney v. Apfel, 524 U.S. 266 (1998). In any case, Fields has never received appellate review of her contention that no offset should be occurring. This is not her fault, and there is no reason why she should not receive that review now.

[5]Fields v. Apfel, No. 98-4206-CV-C-3 (W.D. Mo.).

II.

On appeal, Fields challenges the applicability of 20 C.F.R. § 404.408(a)(2)(i) to her case. She again argues that the Commissioner's interpretation of the regulation is unreasonable, and that the District Court erred in deferring to that interpretation. She also renews her argument that the District Court's order of June 25, 1993, establishes that her disability began before February 1981, and therefore precludes the Commissioner from applying the public-disability-benefits reduction to her case.

We must reject Fields's issue-preclusion argument, substantially for the reasons given by the District Court. That court's earlier ruling, addressing the proper computation of benefits by the AMW method, simply assumed that the AMW method was the appropriate one. That was the position taken by both sides at the time. Thus, the applicability of the AMW method was not placed in issue, and the court's assumption that this method applied cannot have preclusive effect. Both the District Court and the SSA at the time, agreed that Fields's disability had been determined in 1974. A proposition, in order to receive collateral-estoppel effect, must have been actually litigated previously. That is not the case here.

We turn to the merits. It is paragraph (2) of the regulation that we must interpret. Specifically, when did Fields become "disabled"? If her disability began after February 1981, paragraph (2) applies, and her benefits must be reduced on account of her receipt of employment-related disability benefits. If, on the other hand, her disability began in February 1981, or at any earlier time, the offset is not properly applied. Several things are clear. First, Fields did not begin receiving benefits until 1987. Second, she has been awarded a "period of disability" beginning in 1974. However, between 1974 and 1987, she was capable of substantial gainful activity, and in fact did work. So when did she become "disabled"? In general, someone is disabled, under 42 U.S.C. § 423(d)(1), only if there is an "inability to engage in any substantial gainful activity by

reason of . . . [an] impairment . . .."  If this definition applied, Fields would lose, because she was able to engage in substantial gainful activity until 1987.

However, Fields is blind, and special provisions therefore apply to her.  Under 20 C.F.R. § 404.1505(a), there are "different rules for determining disability for people who are statutorily blind."  A definitional section of the statute, 42 U.S.C. § 416(i)(1), provides as follows:

> Except for purposes of sections 402(d), 402(e), 402(f), 423, and 425 of this title, the term "disability" means (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months, or (B) blindness . . ..

The statute goes on to define "blindness," and there is no dispute that Fields meets this definition.  Under this provision, therefore, blindness is ipso facto a "disability."  Certain sections of the statute are excepted from this definition, but the offset section, § 424a, is not one of those listed.

This is not the end of the analysis, however.  The amendment to § 424a that the government wishes to apply to reduce Fields's benefits contained an effective-date provision.  See § 2208(b) of Pub. L. No. 97-35, 95 Stat. 839, which reads as follows:

> The amendments made by Subsection (a) [the subsection that extended reduction of benefits to persons who had been receiving payments other than workers' compensation] shall be effective with respect to individuals who first become entitled to benefits under [42 U.S.C. § 423(a)] for months beginning after the month in which this

Act is enacted [August 1981], but only in the case of an individual who became disabled within the meaning of [42 U.S.C. § 423(d)] after the sixth month preceding the month in which this Act is enacted [August 1981].

Thus, the effective-date provision tells us that Congress intended the reduction requirement to apply to persons who had become disabled after August of 1981, and that, in making this determination, the definition of disability contained in § 423(d) be used. Section 423 is one of the statutes excepted from the definition of disability contained in 42 U.S.C. § 416(i)(1). Accordingly, Fields cannot avail herself, in the circumstances of this case, of the special provision defining blindness as ipso facto a "disability." Instead, her situation is governed by the general definition of disability contained in § 423(d), and, under this definition, she did not become disabled until after 1981. The amendment to § 424a therefore does apply to her, and it is not unreasonable for the Commissioner to read paragraph (2) of his regulation as using the same definition of disability that Congress used in § 424a, the statute pursuant to which the regulation was adopted.

As the District Court observed, this conclusion is consistent with the only other reported case in point, Giattina v. Chater, 916 F. Supp. 555 (E.D. Va. 1996), aff'd, 125 F.3d 848 (Table), 1997 WL 592740 (4th Cir. 1997).

The Commissioner's interpretation of the regulation is not unreasonable. It follows the plain language of the regulation, and is consistent with the statute pursuant to which the regulation was adopted. For these reasons, the judgment of the District Court is

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.